1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10

| | |
|---|---|
| HUNG DANG, M.D., | CASE NO. 3:21-cv-05544-RJB |
| Plaintiff, | ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |
| v. | |
| KIMBERLY MOORE, M.D., *et al.*, | |
| Defendants. | |

This matter comes before the Court on *pro se* Plaintiff Hung Dang M.D.'s Motion for a Preliminary Injunction. Dkt. 72.  The Court has considered the pleadings filed regarding the motion and the remaining record.  The Court is fully advised.

This lawsuit arises out an employment dispute between Dang and doctors and administrators at a hospital in the Franciscan Health Services system (collectively "Franciscan") and administrative proceedings before the Washington State Medical Quality Assurance Commission ("Medical Commission" or "Commission").  Dkt. 1.  His claims against Franciscan have been dismissed with prejudice.  Dkt. 42.

As is relevant to the Plaintiff's pending motion for preliminary injunction, he brings claims against individuals connected to the Medical Commission proceedings, including for violations of his federal first, fourth, fifth and fourteenth amendment rights, his right to enforce an employment contract, and for violation of state law.  Dkt. 1.  For the reasons provided below, his motion for preliminary injunction (Dkt. 72) should be denied.

## I.  BACKGROUND

Washington's Medical Commission is charged, in part, with monitoring the continuing competency of physicians in the state pursuant to the state's Uniform Disciplinary Act ("UDA"). *Nguyen v. State, Dep't of Health Med. Quality Assurance Comm'n*, 144 Wn.2d 516 (2001). After an incident in 2014 when Dang refused to treat a patient who was transferred to St. Joseph Medical Center from a different Franciscan hospital, he was referred to the Medical Commission for potentially violating the Emergency Medical Treatment & Labor Act ("EMTALA") and state law. *Id.*

### A.  COMMISSION RELATED DEFENDANTS

Defendant Dr. Mark Johnson was the chair of the Commission's panel that decided the Plaintiff's case.  Dkt. 73-5.  Defendant Roman Dixon was the presiding Administrative Health Law Judge ("ALJ") and Defendant Debra Defreyn was the lawyer that represented the Department of Health at the administrative proceedings.  *Id.*  Defendant Dr. William Brueggemann is alleged in the complaint to be a Commission "member," but was not on the panel that decided the Plaintiff's case.  Dkt. 73-5.  Defendant Rick Glein is alleged to be a Commission "staff attorney" and Defendant Timothy Slavin is alleged to be a Commission "investigator."  Dkt. 1.  Defendant Christina Pfluger is a lawyer who represented the Department of Health during the Plaintiff's appeals of the Commission's decision.  *Id.*  These Defendants,

1   Johnson, Dixon, Defreyn, Brueggemann, Glein, Slavin and Pfluger, will be collectively referred

2   to in this order as the "Individual State Defendants."

3   **B.  COMMISSION PROCEEDINGS AND DECISION**

4         The Commission held an administrative hearing on Dang's case in January and February

5   of 2017.  Dkt. 73-5.  In its September 29, 2017 Findings of Fact, Conclusions of Law, and Final

6   Order ("Final Order"), the Commission found that Dang's refusal to treat a patient and consult

7   with other physicians on other patients while he was on call constituted unprofessional conduct

8   contrary to state and federal law.  *Id.*  It ordered that his medical license be subject to two years

9   of oversight in addition to imposing other conditions.  *Id.*  As is relevant to the current motion,

10  the Final Order provides, in part:

11        3.2 <u>Oversight.</u> The Respondent's license to practice as a Physician and surgeon in
          the state of Washington shall be subject to oversight for a period of two years
12        from the effective date of this Order.  The Respondent must complete the ethics
          course and presentation of the paper in Paragraphs 3.6 and 3.7 below prior to
13        filing a petition for termination.  The Commission will issue a notice scheduling a
          date and time for the Respondent to appear, unless the Commission waives the
14        need for a personal appearance.
                                         …
15        3.5 <u>Personal Appearances.</u> Respondent must personally appear at a date and
          location determined by the Commission in approximately six (6) months after the
16        effective date of this Agreed Order, or as soon thereafter as the Commission's
          schedule permits.  Thereafter, Respondent must make personal appearances
17        annually or as frequently as the Commission requires unless the Commission
          waives the need for an appearance.  Respondent must participate in a brief
18        telephone call with the Commission's Compliance Unit prior to the appearance.
          The purpose of appearances is to provide meaningful oversight over Respondent's
19        compliance with the requirements of this Agreed Order.  The Commission will
          provide reasonable notice of all scheduled appearances.
20                                        …
          3.14 <u>Termination.</u> Respondent may petition the Commission in writing to
21        terminate this Final Order after two years.

22

23

24

Dkt. 73-5 at 19–20, 22.  It is undisputed that the Plaintiff has not personally appeared before the Commission.  *Id.*  The Individual State Defendants assert that the Plaintiff has not petitioned, in writing, to terminate the Final Order.  Dkt. 74.

## C.  PLAINTIFF'S APPEALS

The Plaintiff appealed the Final Order of the Commission to the King County Superior Court.  Dkt. 73-7.  On August 9, 2018, the King County Superior Court issued its decision and found that:

> There is substantial evidence in the administrative record to support the Commission's findings of fact.
>
> There is no error of law in the Medical Commission's conclusion that the Petitioner committed unprofessional conduct as defined in RCW 18.130.180(1), (4), and (7). . .
>
> The Medical Commission has the authority to determine whether a violation of EMTALA (42 U.S.C § 1395dd(d)(1)) occurred pursuant to their authority to find unprofessional conduct when a licensee violates a federal statute or rule that regulates the profession under RCW 18.130.180(7).
>
> The Medical Commission did not violate the appearance of fairness doctrine.
>
> The Medical Commission did not violate the Petitioner's Due Process Rights.

Dkt. 73-7 at 3.  The King County Superior Court noted that the Commission's Final Order was issued later than the "aspirational time periods identified" in Washington law.  *Id.* at 4.  The court concluded that this "procedural irregularity" did not rise to the level of a Due Process violation, but the delay in issuing the Final Order "prejudiced [Dang] by extending the period of time [sic] he has been subject to sanctions or the possible imposition of sanctions."  *Id.* at 5.  It concluded that the "two-year period of monitoring that should have been completed as of May 26, 2019 had the [Final Order] been timely issued, [was] extended to September 29, 2019."  *Id.* The court ordered, in part, that:

1. The effective date of the Final Order shall be deemed to be May 26, 2017 and not September 29, 2017. Accordingly, Dr. Dang may petition the Commission in writing to terminate the Final Order on or after May 26, 2019 if he has fully complied with all requirements of the Final Order;

2. In all other respects, the Petition for Judicial Review is DENIED. . .

*Id.* at 6.

The Plaintiff then petitioned for review before the Washington State Court of Appeals and raised various statutory and constitutional claims. *Dang v. Washington Dep't. of Health, Med. Quality Assur. Comm'n,* 10 Wn.App.2d 650 (2019). On August 19, 2019, the Court of Appeals affirmed the superior court's decision. *Id.* The Plaintiff's petitions for review from the Washington Supreme Court and the United States Supreme Court were denied. *Dang v. Washington Dep't. of Health, Med. Quality Assur. Comm'n,* 195 Wn.2d 1004 (2020); *Dang v. Washington Dep't. of Health, Med. Quality Assur. Comm'n,* 141 S.Ct. 371 (2020).

On July 29, 2021, the Plaintiff filed this case. Dkt. 1. As stated above, the claims asserted against the Franciscan Defendants have been dismissed. Dkt. 42.

**D.  PENDING MOTION AND ORGANIZATION OF OPINION**

In his motion for a preliminary injunction, Dang moves for an order "prohibiting the MQAC Defendants from enforcing the Final Orders Against Plaintiff because (1) the period of oversight expired on May 26, 2019 as ordered by the King County Superior Court and (2) MQAC disciplinary action against Plaintiff is unconstitutional for continuing to violate Plaintiff's First, Fourth, and Fourteenth Amendment rights." Dkt. 72. The Plaintiff does not clearly identify which Defendants are the "MQAC Defendants."

The Individual State Defendants oppose the motion, arguing that (1) the Court lacks personal jurisdiction over the Commission, (2) the Court lacks subject matter jurisdiction

1  pursuant to the *Rooker-Feldman* doctrine, and (3) Dang cannot establish the required elements

2  for a preliminary injunction.  Dkt. 74.

3      The Plaintiff filed a reply (Dkt. 76) and the motion is ripe for review.

4      This opinion will first address whether it has personal and subject matter jurisdiction and

5  then whether a preliminary injunction should issue.

6                    II.    **DISCUSSION**

7  **A.  PERSONAL JURISDICTION**

8      Personal jurisdiction "goes to the court's power to exercise control over the parties."

9  *Leroy v. Great Western United Corp.,* 443 U.S. 173 (1979).  The Plaintiff bears the burden of

10  showing that the court has personal jurisdiction over the parties.  *Tuazon v. R.J. Reynolds*

11  *Tobacco Co.,* 433 F.3d 1163 (9th Cir. 2006).

12      The Plaintiff seeks an order barring the Medical Commission from enforcing the Final

13  Order against him, asserting that the enforcement of the Final Order constitutes an ongoing

14  violation of his federal constitutional rights.  Dkt. 72.

15      Under Washington's Uniform Disciplinary Act ("UDA"), the Washington Secretary of

16  Health and the Commission have the authority to enforce the UDA.  *See* RCW 18.130.040.  To

17  the extent that the Plaintiff seeks injunctive relief against any Defendant who is not on the

18  Commission, his motion should be denied for lack of personal jurisdiction over those parties for

19  that claim.  The Individual State Defendants properly point out that the Plaintiff has failed to

20  name a current official of the Commission, in their official capacity, as a defendant.  Defendant

21  Dr. Johnson, who was the only party named in his official capacity, left the Commission in 2017.

22  Dkt. 75-2.

23

24

The Plaintiff argues that his failure to name a current official should not be dispositive pointing to Fed. R. Civ. P. 25(d).  Pursuant to Fed. R. Civ. P. 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending.  The officer's successor is automatically substituted."  The central issue with the Plaintiff's argument is that Dr. Johnson did not "cease to hold office while the action was pending."  His time on the Commission was completed before the case was filed in 2021.  While the Plaintiff asks the Court for a more expansive reading of Rule 25(d), he fails to demonstrate that such an interpretation is warranted here.

The Plaintiff has failed to demonstrate that the Court has personal jurisdiction over the Medical Commission.  A plaintiff seeking injunctive relief in a § 1983 action against a state or state agency must "name the official within the entity who can appropriately respond to injunctive relief."  *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 732 (9th Cir. 2022).  This the Plaintiff has not done.

Further, even if the Plaintiff had named the Secretary of Health, the Commission or a member of the Commission in their official capacity, amendment of the Complaint to resolve this deficiency would be futile because, as provided below, the Court does not have subject matter jurisdiction to issue an injunction barring enforcement of the Final Order and, even if it did, the Plaintiff cannot show all elements required for him to be granted injunctive relief.

**B.  SUBJECT MATTER JURISDICTION – *ROOKER-FELDMAN* DOCTRINE**

As stated above, the Plaintiff seeks an order barring the Medical Commission from enforcing the Final Order against him because "the period of oversight under the Final Order expired on May 26, 2019 as ordered by the King County Superior Court" and because the

continuing enforcement of the Final Order violates his constitutional rights.  Dkt. 72.  The King

County Superior Court order provided that:

> The effective date of the Final Order shall be deemed to be May 26, 2017 and not
> September 29, 2017. Accordingly, Dr. Dang may petition the Commission in
> writing to terminate the Final Order on or after May 26, 2019 if he has fully
> complied with all requirements of the Final Order.

Dkt. 73-7 at 6.  The Individual State Defendants point out that it is undisputed that the Plaintiff

has not appeared before the Commission as is required under the Final Order, and argue that he

has not petitioned to terminate the Final Order.  Dkt. 74.  It argues that the Plaintiff's assertion

that he is suffering a legal injury as a result of the last clause of the order (that he can petition to

terminate the Final Order if he has fully complied with all requirements of the Final Order) is

barred by the *Rooker-Feldman* doctrine.  Dkt. 74.

"If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state

court, and seeks relief from a state court judgment based on that decision, *Rooker–Feldman* bars

subject matter jurisdiction in federal district court."  *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir.

2003).

To the extent the Plaintiff now argues that he is suffering a legal injury as a result of a

portion of the superior court order (that he can petition to terminate the Final Order **if he has**

**fully complied with all requirements of the Final Order**) and seeks relief barring enforcement

of the Final Order, his claim is barred by the *Rooker-Feldman* doctrine.

> A party disappointed by a decision of a state court may seek reversal of that
> decision by appealing to a higher state court. A party disappointed by a decision
> of the highest state court in which a decision may be had may seek reversal of that
> decision by appealing to the United States Supreme Court. In neither case may the
> disappointed party appeal to a federal district court, even if a federal question is
> present or if there is diversity of citizenship between the parties.

*Noel* at 1155.  It is a forbidden de facto appeal under *Rooker–Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court (here the addition of the requirement that he comply with all requirements of the Final Order), and seeks relief from the judgment of that court (an injunction barring Final Order enforcement even if all requirements of the Final Order have not been met).  To the extent that the Plaintiff asserts that the King County Superior Court erred in the addition of that clause in its order and seeks relief from enforcement of that order, his claim is a de facto appeal. This Court is without subject matter jurisdiction to determine the validity of the portion of the King County Superior Court order that provided that he can petition to terminate the Final Order **if he has fully complied with all requirements of the Final Order.**  Consequently, the Court is without subject matter jurisdiction to grant the relief he seeks:  an injunction barring enforcement of the Final Order before all requirements of the Final Order are met.

Further, even if the Court had personal jurisdiction over the Commission and subject matter jurisdiction to consider the validity of continuing to enforce the Final Order, the Plaintiff has not shown that he is entitled to a preliminary injunction.

## C.  PRELIMINARY INJUNCTION

Plaintiffs seeking a preliminary injunction must establish one of two tests.  *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017).  The first test requires plaintiffs to show:  (1) that they are "likely to succeed on the merits," (2) that they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Coffman v. Queen of Valley Med. Ctr.*, 895 F.3d 717, 725 (9th Cir. 2018) (*citing Winter v. Nat. Res. Def. Council*, Inc., 555 U.S. 7 (2008) (*internal quotation marks omitted*)).  Under the second variant of the 9th Circuit's test for

a preliminary injunction, the "sliding scale" version of the *Winter* standard, "if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *All. for the Wild Rockies*, at 1217 (*internal quotation marks and citations omitted*).

                1.  <u>Likelihood of Success on the Merits or Serious Questions Going to the Merits</u>

The Plaintiff has failed to show "a likelihood of success on the merits" or that there are "serious questions going to the merits" of his claims.  The Plaintiff moves for an order barring the Commission from enforcing the Final Order because he asserts the Commission's disciplinary action against him constitutes an ongoing violation of his constitutional rights.  Even if the Plaintiff had shown that the Court has personal jurisdiction over the Commission, which he has not, his constitutional claims against the Commission are barred by claim preclusion.

"Under 28 U.S.C. § 1738, federal courts must give 'full faith and credit' to judgments of state courts." *Noel* at 1166.  Section 1738 "commands a federal court to accept the rules chosen by the State from which the judgment is taken." *Id.*  Accordingly, Washington law applies to determine the claim-preclusive effects of the state-court litigation between Plaintiff and the Commission.  "Under Washington law, claim preclusion operates with respect to both claims that were litigated and claims that should have been litigated in a prior action." *Id.* at 1171 (*citing Meder v. CCME Corp.*, 7 Wash.App. 801, 502 P.2d 1252, 1254 (1972)) and Restatement (Second) of Judgments § 22(2) (1982)).

The Plaintiff asserted or could have asserted his current constitutional claims in the state court actions against the Commission.  Indeed, he did assert a claim for violation of his due process rights against the Commission in the state court litigation.  The King County Superior

1    Court held that the Commission did not violate the Plaintiff's due process rights and the

2    Washington Court of Appeals affirmed the superior court's decision.  Further, he could have

3    raised his other constitutional claims in those proceedings.  The UDA states that all hearings

4    before the Commission are governed by Washington's Administrative Procedures Act ("APA").

5    *Nguyen v. State, Dep't of Health Med. Quality Assurance Comm'n*, 144 Wn.2d 516, 520 (2001)

6    (*citing* RCW 18.130.100.  "Under the APA, a reviewing court may grant relief from an

7    administrative agency's ruling if, among other things, the order is in violation of the constitution

8    either on its face or as applied."  *Id.* at 520-521 (*citing* RCW 34.05.570(3)).  The Plaintiff either

9    raised or could have raised his constitutional issues in the state courts.  His constitutional claims

10   against the Commission are barred by claim preclusion.

11          The Plaintiff argues that he could not have brought his damages claims for violation of

12   his constitutional rights before the state courts.  This argument is unavailing as support for his

13   current motion for prospective relief against the Commission.  The Commission is not a person

14   for purposes of relief for damages under 42 U.S.C. § 1983.  *Howlett By and Through Howlett v.*

15   *Rose,* 496 U.S. 356, 365 (1990).

16          The Court need not reach the Individual State Defendants' arguments that they are

17   entitled to absolute judicial immunity or quasi-judicial immunity, and that the claims are barred

18   by the statute of limitations.

19                  2.   Remaining Factors: Irreparable Harm Balance of Equities and Public Interest

20          The Plaintiff has failed to demonstrate that he will be irreparably harmed if the injunction

21   does not issue.  Further, he has failed to show that the balance of equities is in his favor or that an

22   injunction is in the public interest.  The Plaintiff's contentions are without merit.  His motion for

23   injunctive relief should be denied.

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

### III.   ORDER

It is **ORDERED** that:

- The Plaintiff's Motion for a Preliminary Injunction (Dkt. 72) **IS DENIED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 19th day of September, 2022.

ROBERT J. BRYAN
United States District Judge