1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HUNG DANG, M.D.,

                     Plaintiff,

     v.

MARK JOHNSON; WILLIAM M
BRUEGGEMANN; RICK J GLEIN;
ROMAN S. DIXON, JR.; DEBRA L
DEFREYN; CHRISTINA PFLUGER;
TIMOTHY H. SLAVIN,

                    Defendants.

CASE NO. 3:21-cv-05544-RJB

ORDER ON STATE
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
DISMISSAL AND PLAINTIFF'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT

       This matter comes before the Court on the State Defendants' Motion for Summary
Judgment (Dkt. 101), the *pro se* Plaintiff Hung Dang M.D.'s Motion for Partial Summary
Judgment (Dkt. 103), and the State Defendants' motion to strike (Dkt. 105).  The Court has
considered the pleadings filed in support of and in opposition to the motions and the file herein.

       Originally filed on July 29, 2021, this lawsuit arises out of an employment dispute
between Plaintiff and doctors and administrators at a hospital in the Franciscan Health Services
system (collectively "Franciscan") and administrative proceedings before the Washington State

1   Medical Quality Assurance Commission ("Medical Commission" or "Commission").  Dkt. 1.

2   Plaintiff's claims against Franciscan have been dismissed with prejudice. Dkt. 42.

3       The Plaintiff brings claims against individuals connected to the Medical Commission

4   proceedings, including for violations of his federal first, fourth, fifth and fourteenth amendment

5   rights, pursuant to 42 U.S.C. § 1983, his right to enforce an employment contract, pursuant to 42

6   U.S.C. § 1981, 42 U.S.C. § 1985, and for violation of state law.  Dkt. 1.  Each of these

7   Defendants move for summary judgment and dismissal of all claims against them. Dkt. 101.  The

8   Plaintiff moves for partial summary judgment on his first amendment and "§ 1981" claims.  Dkt.

9   103.  For the reasons provided, the Defendants' motion (Dkt. 101) should be granted, the

10  Plaintiff's motion (Dkt. 103) should be denied, and the case dismissed with prejudice.

11       I.      **RELEVANT BACKGROUND, FACTS AND PROCEDURAL HISTORY**

12     **A. MEDICAL COMMISSION OVERVIEW**

13       Washington's Medical Commission is charged, in part, with monitoring the continuing

14  competency of physicians in the state pursuant to the state's Uniform Disciplinary Act ("UDA").

15  *Nguyen v. State, Dep't of Health Med. Quality Assurance Comm'n*, 144 Wn.2d 516 (2001).  The

16  UDA states that all hearings before the Commission are governed by Washington's

17  Administrative Procedures Act ("APA").  RCW 18.130.100.  The UDA regulates unprofessional

18  conduct.  RCW 18.130.180.  Acts of unprofessional conduct under the UDA include acts of

19  moral turpitude relating to the practice of the person's profession and violation of any state or

20  federal statute or administrative rule regulating the profession in question.  RCW

21  18.130.180(7).

22       In this case, on receiving a complaint regarding Dr. Dang, the Commission investigated

23  the allegations (Dkt. 102-7) and after a contested administrative hearing in January and February

24

ORDER ON STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSAL AND
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 2

1   of 2017 (Dkt. 73-5), on September 29, 2017, it concluded the Dr. Dang had engaged in

2   unprofessional conduct and imposed sanctions on his license (Dkt. 73-5).  An amended final

3   order in Dr. Dang's case was issued on December 20, 2017.  Dkt. 73-6.  A more complete

4   explanation of the Commission's process along with the roles played by the moving Defendants

5   follows below.

6   **B.  MEDICAL COMMISSION PROCESS AND DEFENDANTS**

7       Once the Commission receives a complaint of a potential violation, the complaint is

8   referred to a committee of medical commissioners, called a case management team.  Dkt. 102-2

9   at 14.  The case management team determines if an investigation is warranted and if so, the case

10   is sent to the Commission's investigators.  *Id*.

11      As is relevant to this case, after an incident in 2014 when Dr. Dang refused to treat a

12   patient who was transferred to St. Joseph Medical Center from a different Franciscan hospital, he

13   was referred to the Medical Commission for potentially violating the Emergency Medical

14   Treatment and Labor Act and state law.  Dkt. 73-1.  The complaint was reviewed and sent to the

15   Commission's investigators.  Dkt. 102-7 at 4.

16      **Investigator Timothy Slavin**.  Defendant Timothy Slavin, a retired investigator for the

17   Commission, investigated complaints (after they were screened by the case management team),

18   and then submitted reports which were routed to a Reviewing Commission Member.  Dkt. 102-7

19   at 4, 6, 9, and 11.

20      Investigator Slavin was the investigator for the Commission's case against Dr. Dang.

21   Dkt. 107-7 at 13.  The investigation began in July of 2014.  Dkt. 102-10.  On July 21, 2014, the

22   Commission learned that there were other complaints that Dr. Dang had refused to consult on

23   emergency department patients while on call.  Dkt. 73-3.  Investigator Slavin investigated the

24

ORDER ON STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSAL AND
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 3

1    case, but had no role in deciding whether charges would be brought or whether sanctions, if any,

2    would be imposed.  Dkt. 102-7 at 13-14.  Investigator  Slavin's investigation was completed

3    before the Statement of Charges was issued.  *Id.* at 16.  The Statement of Charges against Dr.

4    Dang was issued on March 30, 2016 (Dkt. 102-9) and Mr. Slavin's involvement with Dr. Dang's

5    case was complete more than five years before this case was filed.

6          **Commission Staff Attorney Richard Glein**.  Defendant Richard Glein is an attorney

7    and is now the Legal Director for the Commission.  Dkt. 102-3 at 3-4.  In 2014, he was a staff

8    attorney for the Commission and was assigned to the Commission's case against Dr. Dang.  *Id.*

9    at 7-8.  As the assigned staff attorney, he reviewed the investigation file, and drafted pleadings

10   and made recommendations to the Reviewing Commission Member and the Commission's

11   disposition panel.  *Id.* at 8-9.  Staff attorney Glein cannot act independently on cases before the

12   Commission and is not, and was not, a decision maker on Commission panels, including the

13   panel that decided Dr. Dang's case.  *Id.* at 46.  Staff attorney Glein's work drafting pleadings and

14   advising the Reviewing Commission Member was completed before the January/February 2017

15   administrative hearing.  *Id.* at 44-45.  Dr. Dang has not petitioned to have the Commission's

16   Amended Final Order against him terminated (because he thinks it would make his legal cases

17   moot) (Dkt. 102-8 at 31) and so staff attorney Glein is still the staff attorney assigned to the case

18   (Dkt. 102-3 at 33).

19         **Reviewing Commission Member William Brueggemann, M.D.**  Defendant Dr.

20   William Brueggeman is a board certified emergency medicine physician.  Dkt. 102-2 at 4.  He

21   was a Commission commissioner from 2013-2018 and then a pro tem commissioner until 2022.

22   Dkts. 75-2 and 102-2 at 16.

23

24

ORDER ON STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSAL AND
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 4

1    Dr. Brueggemann was the Reviewing Commission Member in the Commission's case

2    against Dr. Dang.  Dkt. 102-2 at 12-13.  Reviewing Commission Members review investigation

3    files, make presentations to disposition panels, and recommend dispositions of cases.  *Id.* at 13-

4    14.  Reviewing Commission Members do not have independent authority to initiate actions, do

5    not vote on the disposition, and the panels do not always follow the Reviewing Commission

6    Members' recommendations.  *Id.* at 18.  The Reviewing Commission Member's role in a case

7    ends before the conclusion of the administrative hearing unless an imposed sanction includes a

8    personal appearance before the Commission, at which the Reviewing Commission Member

9    would also appear, provide context for the case and participate in dialogue about whether the

10   respondent had corrected the problem.  *Id.* at 26.  Once the Statement of Charges is issued, the

11   Reviewing Commission Member is excluded from the administrative hearing.  *Id.* at 37-38.

12   In the Commission's case against Dr. Dang, Reviewing Medical Commissioner Dr.

13   Brueggemann reviewed the investigative file, made an assessment of whether Dr. Dang acted or

14   failed to act in a manner that presented a risk to the public, and made a recommendation to the

15   Commission Disposition Panel.  *Id.* at 20. Reviewing Medical Commissioner Dr.

16   Brueggemann's has taken no action in Dr. Dang's case since before the January/February 2017

17   hearing.  *Id.* at 37-38.

18   **Washington State Assistant Attorneys General ("AAG") Debra Defreyn and**

19   **Christina Pfluger.**  Defendant Debra Defreyn is the AAG who participated in the administrative

20   hearing in Dr. Dang's case.  Dkt. 102-5 at 4-5.  At the administrative hearing, AAG Defreyn

21   prosecuted the allegations of UDA violations against Dr. Dang.  *Id.* at 7.  Her role at the

22   administrative hearing was to present evidence and argument to the Commission disposition

23   panel.  *Id.* at 17-18.  She did not vote on the disposition or decide the sanctions.  *Id.* at 17-18.

24

After the administrative hearing, AAG Defreyn supervised Defendant AAG Christina Pfluger, the lawyer who handled the judicial review and appeals of Dr. Dang's case. *Id.* at 5. AAG Pfluger was not involved in the case until the petition for judicial review was filed on October 27, 2017. Dkt. 102-6.

**Commission Disposition Panel Chair**. Defendant Mark Johnson, M.D. is a retired physician who was a commissioner with the Commission from 2008-2017. Dkt. 102-1 at 3-4. He chaired the Commission Disposition Panel that decided the disciplinary case against Dr. Dang. *Id.* at 5. Panel Chair Dr. Johnson is sued in his official capacity although he retired from the Commission in 2017 and this case was filed in 2021. After the Amended Final Order was signed on December 20, 2017, Panel Chair Dr. Johnson did not discuss the case with the other two commissioners on the panel (who are not named here) or with the health law judge that presided over the case. *Id.* at 12.

**Administrative Hearing Health Law Judge**. Defendant Roman Dixon is a lawyer and a health law judge for the Washington State Department of Health. Dkt. 102-4 at 4. He presides over cases that come before the Department (including Commission cases) and was the health law judge that presided over the Commission's case against Dr. Dang. *Id.* at 6-7. Health Law Judge Dixon set the case schedule, handled pretrial matters, presided over the January/February 2017 administrative hearing, and drafted the final orders for the Commission Disposition Panel chair to sign based on the information that the Commission Disposition Panel wanted in the final orders. *Id.* at 8-9. Health Law Judge Dixon did not vote on the disposition of the case, but was present while the Commission Disposition Panel decided the case and advised them on the applicable law. Dkt. 102-1 at 11. Health Law Judge Dixon's role in the case ended when the Amended Final Order was issued on December 20, 2017. Dkt. 104-4 at 34.

1      **Additional Facts.**  As is apparent, the Commission held an administrative hearing on Dr.

2   Dang's case in January and February of 2017. Dkt. 73-5.  A final order was issued on September

3   29, 2017 (Dkt. 73-5); this order was amended on December 20, 2017 (Dkt. 73-6).  In its

4   December 20, 2017 Amended Findings of Fact, Conclusions of Law, and Final Order

5   ("Amended Final Order"), the Commission found that Dr. Dang's refusal to treat a patient and

6   consult with other physicians on other patients while he was on call constituted unprofessional

7   conduct contrary to state and federal law.  Dkt. 73-6.  It ordered that his medical license be

8   subject to two years of oversight in addition to imposing other conditions. *Id.* As is relevant to

9   the current motions, the Amended Final Order provides, in part:

10          3.2 Oversight. The Respondent's license to practice as a Physician and surgeon in
            the state of Washington shall be subject to oversight for a period of two years
11          from the effective date of this Order. The Respondent must complete the ethics
            course and presentation of the paper in Paragraphs 3.6 and 3.7 below prior to
12          filing a petition for termination. The Commission will issue a notice scheduling a
            date and time for the Respondent to appear, unless the Commission waives the
13          need for a personal appearance.
                …
14
            3.5 Personal Appearances. Respondent must personally appear at a date and
15          location determined by the Commission in approximately six (6) months after the
            effective date of this Agreed Order, or as soon thereafter as the Commission's
16          schedule permits. Thereafter, Respondent must make personal appearances
            annually or as frequently as the Commission requires unless the Commission
17          waives the need for an appearance. Respondent must participate in a brief
            telephone call with the Commission's Compliance Unit prior to the appearance.
18          The purpose of appearances is to provide meaningful oversight over Respondent's
            compliance with the requirements of this Agreed Order. The Commission will
19          provide reasonable notice of all scheduled appearances.
                …
20
            3.14 Termination. Respondent may petition the Commission in writing to
21          terminate this Final Order after two years.

22

23

24

Dkt. 73-6 at 19–20, 22. It is undisputed that the Plaintiff has not personally appeared before the Commission.  *Id.*  The Individual State Defendants assert that the Plaintiff has not petitioned, in writing, to terminate the Amended Final Order. Dkt. 74.

**C.  PLAINTIFF'S STATE COURT APPEALS**

The Plaintiff appealed the Commission's decision to the King County, Washington Superior Court. Dkt. 73-7. On August 9, 2018, the superior court issued its decision and found that:

> There is substantial evidence in the administrative record to support the Commission's findings of fact.
>
> There is no error of law in the Medical Commission's conclusion that the Petitioner committed unprofessional conduct as defined in RCW 18.130.180(1), (4), and (7). . .
>
> The Medical Commission has the authority to determine whether a violation of [Emergency Medical Treatment and Active Labor Act] (42 U.S.C § 1395dd(d)(1)) occurred pursuant to their authority to find unprofessional conduct when a licensee violates a federal statute or rule that regulates the profession under RCW 18.130.180(7). The Medical Commission did not violate the appearance of fairness doctrine. The Medical Commission did not violate the Petitioner's Due Process Rights.

Dkt. 73-7 at 3. The superior court noted that the Commission's order was issued later than the "aspirational time periods identified" in Washington law. *Id.* at 4. The court concluded that this "procedural irregularity" did not rise to the level of a Due Process violation, but the delay in issuing the order "prejudiced [Dang] by extending the period of time [sic] he has been subject to sanctions or the possible imposition of sanctions."  *Id.* at 5.  It concluded that the "two-year period of monitoring that should have been completed as of May 26, 2019 had the [Order] been timely issued, [was] extended to September 29, 2019." *Id.* The court ordered, in part, that:

> 1.  The effective date of the Final Order shall be deemed to be May 26, 2017 and not September 29, 2017. Accordingly, Dr. Dang may petition the Commission in

writing to terminate the Final Order on or after May 26, 2019 if he has fully complied with all requirements of the Final Order;

2. In all other respects, the Petition for Judicial Review is DENIED. . .

*Id*. at 6.

The Plaintiff then petitioned for review before the Washington State Court of Appeals and raised various statutory and constitutional claims. *Dang v. Washington Dep't. of Health, Med. Quality Assur. Comm'n*, 10 Wn.App.2d 650 (2019). On August 19, 2019, the Court of Appeals affirmed the superior court's decision. *Id.*  The Plaintiff's petitions for review from the Washington Supreme Court and the United States Supreme Court were denied. *Dang v. Washington Dep't. of Health, Med. Quality Assur. Comm'n*, 195 Wn.2d 1004 (2020); *Dang v. Washington Dep't. of Health, Med. Quality Assur. Comm'n*, 141 S.Ct. 371 (2020).

On July 29, 2021, the Plaintiff filed this case. Dkt. 1. As stated above, the claims asserted against the Franciscan Defendants have been dismissed. Dkt. 42.

## II.    DISCUSSION

### A. MOTION TO STRIKE

The State Defendants move to strike portions of the Plaintiff's Declaration (Dkt. 104) and certain attachments (see e. g. Dkts. 104-1 – 104-30).  Dkt. 105.

The State Defendants' motion (Dkt. 105) should be denied without prejudice.  While the Court considered the Plaintiff's submissions, they were not particularly helpful in deciding these motions.

### B. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The moving party is

1    entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

2    showing on an essential element of a claim in the case on which the nonmoving party has the

3    burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

4    of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

5    for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

6    (1986) (nonmoving party must present specific, significant probative evidence, not simply "some

7    metaphysical doubt.").  Conversely, a genuine dispute over a material fact exists if there is

8    sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve

9    the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986);

10   *T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

11          The determination of the existence of a material fact is often a close question.  The court

12   must consider the substantive evidentiary burden that the nonmoving party must meet at trial,

13   which is a preponderance of the evidence in most civil cases.  *Anderson,* 477 U.S. at 254; *T.W.*

14   *Elect.,* 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of the

15   nonmoving party only when the facts specifically attested by that party contradict facts

16   specifically attested by the moving party.  The nonmoving party may not merely state that it will

17   discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

18   to support the claim.  *T.W. Elect.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at

19   255).  Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts"

20   will not be "presumed." *Lujan v. Nat'l Wildlife Fed*., 497 U.S. 871, 888–89 (1990).

21   **C.  CLAIMS AGAINST THE COMMISSION – LACK OF PERSONAL**
          **JURISDICTION, *ROOKER-FELDMAN* AND CLAIM PRECLUSION OF**
22        **FEDERAL CLAIMS**

23               1.  <u>Personal Jurisdiction over the Commission or Any Party Against Whom
                   Injunctive Relief Requested Here Could be Granted</u>

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Personal jurisdiction "goes to the court's power to exercise control over the parties." *Leroy v. Great Western United Corp.,* 443 U.S. 173 (1979).  The Plaintiff bears the burden of showing that the court has personal jurisdiction over the parties.  *Tuazon v. R.J. Reynolds Tobacco Co.,* 433 F.3d 1163 (9th Cir. 2006).

The Plaintiff failed to show that the Court has personal jurisdiction over the Commission. He has not named the Washington Secretary of Health or the Commission as a Defendant. While he named one Defendant, Panel Chair Dr. Johnson, in his official capacity, as the Plaintiff has been informed in prior orders (e.g. Dkt. 77), that is not sufficient here.  Dr. Johnson's service on the Commission ended in 2017, well before the 2021 Complaint was filed.  Further explanation of this issue is in the September 19, 2022 order that denied the Plaintiff's motion for preliminary injunction in which Plaintiff sought an order enjoining the Commission from enforcing the Amended Final Order against him.  Dkt. 77.  In that motion, the Plaintiff maintained that the Commission's enforcement of the Amended Final Order constituted an ongoing violation of his constitutional rights.  Dkt. 72.  In explaining why the Court does not have personal jurisdiction over the Commission, the order provided:

> Under . . . UDA, the Washington Secretary of Health and the Commission have the authority to enforce the UDA.  *See* RCW 18.130.040.  To the extent that the Plaintiff seeks injunctive relief against any Defendant who is not on the Commission, his motion should be denied for lack of personal jurisdiction over those parties for that claim.  The Individual State Defendants properly point out that the Plaintiff has failed to name a current official of the Commission, in their official capacity, as a defendant.   Defendant Dr. Johnson, who was the only party named in his official capacity, left the Commission in 2017.

*Id.* at 77.  The Plaintiff argues that his failure to name a current official should not be dispositive pointing to Fed. R. Civ. P. 25(d).  This issue was raised and rejected in the September 19, 2022 order.  Dkt. 77. The Court noted,

1

2

3

4

> Pursuant to Fed. R. Civ. P. 25(d), "[a]n action does not abate when a public
> officer who is a party in an official capacity . . . ceases to hold office while the
> action is pending. The officer's successor is automatically substituted." The
> central issue with the Plaintiff's argument is that Dr. Johnson did not "cease to
> hold office while the action was pending." His time on the Commission was
> completed before the case was filed in 2021. While the Plaintiff asks the Court
> for a more expansive reading of Rule 25(d), he fails to demonstrate that such an
> interpretation is warranted here.

5

6

*Id.* This reasoning still applies. The Plaintiff argues that he named one individual who is still on

7

the Commission staff: Staff Attorney Glein. He maintains that Staff Attorney Glein **could** be

8

sued in his official capacity. The Plaintiff's argument is unavailing.

9

A plaintiff seeking injunctive relief in a § 1983 action against a state or state agency must

10

"name the official within the entity who can appropriately respond to injunctive relief." *Riley's*

11

*Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 732 (9th Cir. 2022). There is no showing that

12

Staff Attorney Glein could "appropriately respond to injunctive relief." *Id.* The Plaintiff fails to

13

point to any other named Defendant that could give him the injunctive relief he seeks.

14

Accordingly, this Court does not have jurisdiction to award injunctive relief on Plaintiff's claims.

15

Further, even though the Plaintiff was notified last September of this deficient failure to

16

name the Commission (Dkt. 77), he failed to remedy this. Amendment of the Complaint to

17

resolve this deficiency is unhelpful. Amendment would be untimely (the case was filed in 2021

18

and trial is set to begin in two months) and prejudicial (discovery has closed). It would also be

19

futile. Had the Plaintiff named Washington Secretary of Health, the Commission, or a current

20

member of the Commission in their official capacity, amendment of the Complaint to resolve

21

this deficiency would also be futile because, as provided below, his federal Constitutional claims

22

for declaratory and injunctive relief against the Commission are barred by the doctrine

23

announced in *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923) and *District of Columbia Ct. of*

24

*Appeals v. Feldman,* 460 U.S. 462 (1983) ("*Rooker-Feldman*") (explained in section B. 2.), and

claim preclusion (in section B. 3.), and because the Commission has absolute judicial immunity (in section C. 1.) for claims for damages.

### 2. Federal Constitutional Claims for Injunctive and Declaratory Relief Requested Here Barred by *Rooker-Feldman*

In the September 19, 2022 order denying the Plaintiff's motion for preliminary injunctive relief on the federal constitutional claims, the undersigned found that the Court does not have subject matter jurisdiction to consider those claims under the *Rooker-Feldman* doctrine.  Dkt. 77. The Plaintiff fails to show that the doctrine does not apply.  The reasoning from the September 19, 2022 order is adopted (Dkt. 77) and serves as one basis to dismiss the Plaintiff's federal Constitutional claims for injunctive and declaratory relief.  The Plaintiff's federal Constitutional claims for injunctive and declaratory relief should also be dismissed because they are barred by claim preclusion.

### 3. Claim Preclusion on Federal Constitutional Claims for Injunctive and Declaratory Relief

"Under 28 U.S.C. § 1738, federal courts must give 'full faith and credit' to judgments of state courts." *Noel* at 1166.  Section 1738 "commands a federal court to accept the rules chosen by the State from which the judgment is taken." *Id.*  Accordingly, Washington law applies to determine the claim-preclusive effects of the state-court litigation between Plaintiff and the Commission.  "Under Washington law, claim preclusion operates with respect to both claims that were litigated and claims that should have been litigated in a prior action." *Id.* at 1171 (*citing Meder v. CCME Corp.*, 7 Wash.App. 801, 502 P.2d 1252, 1254 (1972) and Restatement (Second) of Judgments § 22(2) (1982)).

The Plaintiff asserted or could have asserted his current federal constitutional claims for injunctive and declaratory relief in the state court actions against the Commission.  Indeed, he

1   did assert a claim for violation of his due process rights against the Commission in the state court

2   litigation.  The King County Superior Court held that the Commission did not violate the

3   Plaintiff's due process rights and the Washington Court of Appeals affirmed the superior court's

4   decision.  Further, he could have raised his other constitutional claims in those proceedings.  The

5   UDA states that all hearings before the Commission are governed by Washington's

6   APA.  *Nguyen* at 520.  "Under the APA, a reviewing court may grant relief from an

7   administrative agency's ruling if, among other things, the order is in violation of the constitution

8   either on its face or as applied."  *Id.* at 520-521 (*citing* RCW 34.05.570(3)).  The Plaintiff either

9   raised or could have raised his constitutional issues and sought declaratory and injunctive relief

10  on those claims in the state courts.  His constitutional claims for injunctive and declaratory relief

11  against the Commission are barred by claim preclusion.

12      While the Plaintiff complains that he could not have raised his constitutional claims for

13  damages in his prior state court actions against the Commission, his argument is unavailing

14  because the Commission and all the named Defendants are entitled to absolute judicial immunity

15  against his federal claims for damages.

16  **D. ABSOLUTE QUASI-JUDICIAL IMMUNITY AND QUASI-PROSECUTORIAL**
    **IMMUNITY ON FEDERAL CLAIMS FOR DAMAGES AS APPLIED TO BOTH**
17  **THE COMMISSION AND NAMED DEFENDANTS**

18      "Anglo–American common law has long recognized judicial immunity, a sweeping form

19  of immunity for acts performed by judges that relate to the judicial process."  *In re Castillo*, 297

20  F.3d 940, 947 (9th Cir. 2002). The immunity "applies however erroneous the act may have been,

21  however injurious in its consequences," and it extends to claims both for damages and for

22  equitable relief. *Moore v. Brewster*, 96 F.3d 1240, 1244 (9th Cir. 1996)).  Absolute immunity has

23  been extended to prosecutors functioning in their official capacities.  *Imbler v. Pachtman,* 424

24

U.S. 409, 430-31 (1976).  Courts have also extended absolute judicial immunity on claims for damages not only to judges but also to governmental "officers whose functions bear a close association to the judicial process." *Demoran v. Witt*, 781 F.2d 155, 156 (9th Cir. 1985)(*internal citations omitted*).

To determine whether the Commission and the named Defendants function in a sufficiently judicial or prosecutorial capacity, the following nonexclusive factors are considered:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) the [agency's] insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Olsen v. Idaho State Bd. of Med*., 363 F.3d 916, 923 (9th Cir. 2004)(concluding that Idaho medical board officials were entitled to absolute immunity for their quasi-judicial and quasi-prosecutorial functions).

The Commission and the named Defendants (Investigator Slavin, Staff Attorney Glein, Reviewing Commissioner Dr. Brueggemann, AAG Defreyn, AAG Pfluger, Panel Chair Dr. Johnson, and Health Law Judge Dixon) function in a sufficiently judicial or prosecutorial manner to warrant the application of absolute immunity for their quasi-judicial and quasi-prosecutorial functions regarding the Plaintiff's federal constitutional claims for damages.  First, in view of the public interest of ensuring quality health care, there is a "strong need" to make certain that medical boards and their members can perform disciplinary functions without the threat of harassment or intimidation.  *Olsen* at 924.  Second, the Commission functions under statutes and regulations, *See e.g.* RCW 18.130.50 and Washington Administrative Code ("WAC") 264-10-606, and under the Washington APA, RCW 34.05 *et. seq.*, ensuring the presence of safeguards. Third, the procedural requirements of their decision-making process show that the Commission

and the Defendants are sufficiently insulated from political influence. *Olsen* at 924. Lastly, the

remaining factors are met, there are requirements for retaining agency orders, WAC 246-10-705,

the Commission's proceedings are adversarial, and Washington law provides a scheme of review

of the Commission's decisions, WAC 246-10-701 – 708. After reviewing Washington's

administrative and procedural scheme for the regulation of medical professionals, the

Commission, its "members, professional staff and counsel function in a sufficiently judicial and

prosecutorial capacity to entitle them to absolute immunity." *Olsen* at 926.

       After determining that the Commission, "its members, professional staff and counsel" are

potentially entitled to absolute immunity for their quasi-judicial and quasi-prosecutorial

functions, the next issue is to determine whether any of the actions by the Defendants fell outside

the scope of the that immunity. *Olsen* at 927.

       The Plaintiff fails to point to any conduct by the Commission or the named Defendants

that was not quasi-judicial or quasi-prosecutorial in nature. Each of the named Defendants'

actions were and are intimately connected to their statutorily authorized function to adjudicate

disciplinary disputes involving the licensing of physicians. *Olsen* at 928. Plaintiff complains

that the Commission's decision was based on the wrong statute. That is, and was, a subject for

judicial review of the decision and does not establish the Commission acted outside its

jurisdiction such that the Commission, and its members and staff, are not entitled to absolute

immunity. The acts of the named Defendants "are no less judicial or prosecutorial because they

may have been committed in error." *Olsen* at 928. Further, the Plaintiff makes no showing that

the Commission's efforts to enforce the sanctions it imposed against him were retaliatory and not

1  connected to its statutorily authorized functions.  The Commission and the named Defendants are

2  entitled to absolute immunity on the Plaintiff's federal constitutional claims for damages.[1]

3  **E.  ADDITIONAL GROUNDS TO DISMISS THE PLAINTIFF'S FEDERAL CLAIMS**
   **AGAINST THE NAMED DEFENDANTS – STATUTE OF LIMITATIONS AND**

4  **QUALIFIED IMMUNITY**

5      The named Defendants assert that the federal claims should also be dismissed on

6  summary judgment because they are additionally protected by qualified immunity and that the

7  Plaintiff's claims are barred by the statutes of limitation.

8      1.  Qualified Immunity

9      As an additional ground for dismissal of the federal claims, the Defendants contend that

10  they are entitled to qualified immunity against the Plaintiff's federal claims.

11      Defendants in a Section 1983 action are entitled to qualified immunity from damages for

12  civil liability if their conduct does not violate clearly established statutory or constitutional rights

13  of which a reasonable person would have known. *Pearson v. Callahan*, 129 S.Ct. 808, 815

14  (2009)(*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In analyzing a qualified

15  immunity defense, the Court must determine: (1) whether a constitutional right would have been

16  violated on the facts alleged, taken in the light most favorable to the party asserting the injury;

17  and (2) whether the right was clearly established when viewed in the specific context of the case.

18  *Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001). While the sequence set forth in *Saucier* is often

19  appropriate, it is no longer regarded as mandatory. *Pearson* at 811.

20      The named Defendants' motion for summary judgment should also be granted because

21  they have qualified immunity against the Plaintiff's federal claims.  He has failed to demonstrate

22

23  _____
   [1] While the Plaintiff asserts that absolute immunity is not available on his claims for injunctive relief, as stated
   above in Section A., the Plaintiff has not named a defendant that can give him the injunctive relief he seeks here,

24  and even if he had, his claims for injunctive relief are barred by the *Rooker-Feldman* doctrine and claim preclusion.

1    that the rights he allege were violated were clearly established.  *Pearson* at 811.  The Plaintiff

2    references constitutional rights generally but does not show that the particular facts and

3    circumstances here would a lead a reasonable official in the Defendants' position to realize that

4    they have violated his Constitutional rights.  *Saucier* at 2156.

       2.  <u>Additional Ground for Summary Judgment - Statute of Limitations - Claims with a Three Year Statute of Limitation - §§ 1983 and 1985</u>

5    "Section 1983 does not contain its own statute of limitations," so federal courts borrow

6    the applicable statute of limitations from forum states.  *TwoRivers v. Lewis*, 174 F.3d 987, 991–

7    92 (9th Cir. 1999).  Under Washington law, personal injury claims are limited by a statute of

8    limitations of three years.  RCW 4.16.080(2).  Section 1985 claims are governed by the same

9    statute of limitations as § 1983 claims.  *McDougal v. County of Imperial,* 942 F.2d 668, 673-74

10    (9th Cir. 1991).

11    The Plaintiff filed this case on July 29, 2021.  Dkt. 1.  Accordingly, the §§ 1983 or 1985

12    claims must be based on the named Defendants' conduct that occurred after July of 2018 unless

13    the statutes of limitation should be tolled.

14    The Plaintiff fails to demonstrate that there is any basis to toll the statutes of limitation as

15    to the named Defendants.  His arguments regarding the Commission's jurisdiction and "abuse of

16    process" are frivolous in that he fails to show how those arguments apply to the named

17    Defendants.  The Plaintiff's contention, that each of the Defendants' actions constitute ongoing

18    violations, is unpersuasive.  His claims are rooted in the Defendants' past conduct.  The mere

19    impact from past violations, like the non-party Commission's attempts at enforcing the Final

20    Amended Order, is not actionable against the named Defendants.  *Knox v. Davis,* 260 F.3d 1009,

21    1013 (9th Cir. 2001).  The Plaintiff continually conflates the named Defendants, and their actions

22    and potential liability, with the Commission and its actions and potential liability.  The

1    Commission is not a party in this case.  The Plaintiff's contention that each of the named

2    Defendants' conduct resulted in a continuing violation is without merit.  Each of the named

3    Defendants' conduct will now be assessed.

4           Investigator Slavin's involvement with Dr. Dang's case was complete before March 30,

5    2016, when the Statement of Charges was issued, that is more than five years before the case was

6    filed.  Staff attorney Glein and Reviewing Medical Commissioner Dr. Brueggemann has not

7    taken an action relating to Dr. Dang's case since before the administrative hearing in

8    January/February of 2017, over four years since this case was filed.  AAG Defreyn's actions

9    prosecuting the Commission's case against Dr. Dang before the Commission's Disposition Panel

10   were complete at the end of the January/February 2017 hearing.  AAG Defreyn's actions

11   prosecuting the case occurred more than four years since the case was filed.  (AAG Defreyn

12   supervised Defendant AAG Pfluger, the lawyer who handled the judicial review and appeals of

13   Dr. Dang's case.  AAG Pfluger was not involved in the case until the petition for judicial review

14   was filed on October 27, 2017.  So, AAG's Defreyn's supervisory conduct and AAG Pfluger's

15   conduct defending the Commission's decision is not barred by the statute of limitations.)  Panel

16   Chair Dr. Johnson's and Health Law Judge Dixon's involvement with Dr. Dang's case ended

17   with the issuance of the Amended Final Order on December 20, 2017, more than 3 ½ years

18   before this case was filed.

19          With the exception of AAG Pfluger, the lawyer who handled the judicial review and

20   appeals of Dr. Dang's case and AAG Defreyn who supervised Defendant AAG Pfluger, the

21   Plaintiff has failed to point to any action by any of the named Defendants occurring after

22   December 20, 2017.  Accordingly, his §§ 1983 and 1985 claims against all Defendants except

23

24

Defendants AAGs Defreyn and Pfluger are time barred.  As above, Defendants AAGs Defreyn and Pfluger have absolute immunity and qualified immunity in any event.

While the Plaintiff contends that the statutes of limitation did not accrue until he was constructively discharged on August 1, 2017 and/or the termination of a contract on December 26, 2017, he fails to demonstrate that any of the named Defendants took an action which caused his discharge or the termination of the contract.  He again conflates the Commission's potential liability with the named Defendants.

    3.  <u>Additional Ground for Summary Judgment - Claim with a Four Year Statute of Limitation</u>

While the parties dispute what the proper statute of limitations for claims brought under 42 U.S.C. § 1981, the Court will assume for purposes of this motion that the statute of limitations for claims brought under 42 U.S.C. § 1981 is four years.  *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369 (2004).

In order to avoid dismissal of his § 1981 claim based on the statute of limitation, the Plaintiff must point to the named Defendants' conduct that occurred after July of 2017.  The Plaintiff fails to point to any conduct by Investigator Slavin, Staff attorney Glein or Reviewing Medical Commissioner Dr. Brueggemann that occurred within the time allowed by the statute of limitations that would give rise to his claims under § 1981.  The Plaintiff's § 1981 claims against Slavin, Glein and Brueggemann should also be dismissed as barred by the statutes of limitation. As stated above, this is an additional ground to dismiss the federal constitutional claims; the remaining named Defendants also have absolute immunity and qualified immunity.

**F.  STATE LAW CLAIMS**

1   There is no private cause of action for a claim under the Washington State Constitution,

2   *Janaszka v. State,* 173 Wn.App. 703, 724 (2013), so claims based on violations of the

3   Washington State Constitution should be dismissed with prejudice and without further analysis.

4       The statute of limitations for a claim under the Washington Law Against Discrimination,

5   RCW 49.60 *et. seq.* ("WLAD") is three years, *Antonius v. King Cnty.*, 153 Wn.2d 256 (2004).

6   The Plaintiff fails to point to any actions of the named Defendants that both constituted a

7   violation of the WLAD and occurred within the time period allotted for a claim to be filed.  His

8   WLAD claim should be dismissed as barred by the statute of limitation.

9       The Plaintiff's claims for violation of Washington's Consumer Protection Act ("CPA")

10  should be dismissed because the CPA does not apply to the Commission, its members or staff for

11  actions that "are specifically permitted within the statutory authority granted to . . . [the]

12  commission."  RCW 19.86.170.  Such actions "shall not be construed as a violation" of the CPA.

13  *Id.*

14      The Plaintiff has failed to point to any evidence that the Commission, its members or

15  staff took actions which were not specifically permitted within the granted statutory authority.

16  His CPA claims should be dismissed.

17      Lastly, the UDA provides that "the secretary, members of the boards or commissions, or

18  individuals acting on their behalf are immune from suit in any action, civil or criminal, based on

19  any disciplinary proceedings or other official acts performed in the course of their duties."  RCW

20  § 18.130.300.  There is no evidence from which to conclude that RCW § 18.130.300 does not

21  apply to the named Defendants here.  All state law claims asserted against them should be

22  dismissed.

23

24

**G.  CONCLUSION**

The State Defendants' motion to strike (Dkt. 105) should be denied without prejudice, the Plaintiff's motion for partial summary judgment (Dkt. 103) should be denied and the State Defendants' motion for summary judgment (Dkt. 101) should be granted.

This Court does not have personal jurisdiction over the Commission or any other party in order to grant the Plaintiff the injunctive relief he seeks on his federal claims.  Further, even if the Court had personal jurisdiction over the Commission, his claims for declaratory and injunctive relief would be barred by the *Rooker-Feldman* doctrine and claim preclusion. Additionally, all federal claims for damages, against either the Commission or the named Defendants should be dismissed because they are entitled to absolute immunity and qualified immunity.  Further, the statutes of limitation bar several of the claims against several of the named Defendants.

As to the state law claims, there is no private cause of action under the Washington State Constitution, the WLAD claim is barred by the statute of limitations, and the CPA does not apply.  Further, the named Defendants are immune from all of these state law claims under RCW § 18.130.300.

The Plaintiff's motion for summary judgment should be denied.  All deadlines in this case should be stricken, all other motions stricken as moot and this case should be dismissed.

### III.    <u>ORDER</u>

Therefore, it is hereby **ORDERED** that:

- The State Defendants' motion to strike (Dkt. 105) **IS DENIED WITHOUT PREJUDICE**;

- Plaintiff's Motion for Partial Summary Judgment (Dkt. 103) **IS DENIED;** and

1

2

3

- State Defendants' Motion for Summary Judgment (Dkt. 101) **IS GRANTED;**

  - All deadlines in this case **ARE STRICKEN**, all other motions **ARE STRICKEN AS MOOT** and this case **IS DISMISSED**.

4     The Clerk is directed to send uncertified copies of this Order to all counsel of record and

5 to any party appearing pro se at said party's last known address.

6     Dated this 21st day of June, 2023.

7

8

9

_Robert J Bryan_

ROBERT J. BRYAN
United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSAL AND
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 23